1   LINDA CLAXTON, State Bar No. 125729
    linda.claxton@ogletreedeakins.com
2   ANDREA G. DUCKWORTH, State Bar No. 249518
    andrea.duckworth@ogletreedeakins.com
3   OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
4   633 West Fifth Street, 53rd Floor
    Los Angeles, California 90071
5   Telephone:  (213) 239-9800
    Facsimile:   (213) 239-9045
6
    Attorneys for Defendants
7   SPHERION CORPORATION,
    SPHERION ASSESSMENT, INC.,
8   TSRC OF FLORIDA, INC.,
    TECHNISOURCE, INC. AND TAMMY HAWKINS
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                                          SACV10-72

13                                          Case No. _____
    HEATHER HUGGINS, an individual;
14                                          NOTICE OF REMOVAL
                Plaintiff,
15
         v.
16
    SPHERION CORPORATION,
17  SPHERION ASSESSMENT, INC.,           [Concurrently filed with Civil Cover
    TSRC OF FLORIDA, INC.,               Sheet; Declarations of Nancy Kowalski,
18  CORPORATE CREATIONS                  Carol Chapman and Tammy Hawkins;
    NETWORK, INC., TECHNISOURCE,         Notice of Related Cases; Notice of
19  INC.; TAMMY HAWKINS, an              Interested Parties]
    individual, and DOES 1-50, inclusive,
20
                Defendants.
21

22

23

24

25

26

27

28

1         Defendants Spherion Corporation and Technisource, Inc. ("Spherion,"

2    "Technisource" or "Defendants"), hereby remove this action to this Court on the

3    basis of (1) federal question jurisdiction, pursuant to 28 USC §1331 and 28 USC

4    §1441(b) in that it arises under federal statute, Title VII, 42 USC §2000e, *et seq.* and

5    (2) diversity jurisdiction pursuant to 28 U.S.C. §1332 and § 1441(a), and, in support

6    thereof, states as follows:

7         1.    On December 16, 2009, Defendant was served with a copy of a

8    Summons and Complaint styled Heather Huggins v. Spherion Corporation, Spherion

9    Assessment, Inc., TSRC of Florida, Inc., Corporate Creations Network, Inc.,

10   Technisource, Inc., Tammy Hawkins, and individual and DOES 1-50, inclusive, No.

11   30-2009-00327576, in the Superior Court of California, County of Orange.  A copy

12   of the Summons and Complaint is attached to this Notice of Removal as Exhibit A.

13   On January 4, 2010, Plaintiff dismissed Corporate Creations Network, Inc. from this

14   action and the Entry of Dismissal was filed on January 6, 2010. A copy of the Notice

15   of Entry of Dismissal which Defendants received is attached as Exhibit B.  These

16   documents constitute all pleadings, process and other documents Defendants have

17   received in this action.  These documents are the initial pleadings received by

18   Defendants setting forth the claims upon which Plaintiff's action is based.

19        2.    This action is a civil action in which this court has original jurisdiction

20   under 28 U.S.C. § 1332, and is one which This action is a civil action in which this

21   Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1332, and is one which

22   may be removed to this court by Defendants pursuant to 28 U.S.C. §1441(a) and (b)

23   in that it arises under federal statute, Title VII, 42 USC §2000e, *et seq.,* and is a civil

24   action between citizens of different states because the only non diverse Defendant,

25   Tammy Hawkins, is a fraudulently joined defendant and should be disregarded for

26   purposes of determining diversity jurisdiction, and the matter in controversy exceeds

27   $75,000 exclusive of interest and costs.

28

3.      Plaintiff is a citizen of the State of California.  (Complaint ¶ 1.)  At both the time the state court action was filed, and at the time of removal, Defendants Spherion and Technisource were (and are) incorporated under the laws of the State of Delaware and have their principal place of business in Fort Lauderdale, Florida. (Declaration of Nancy Kowalski, ¶2).  Defendant Spherion Assessment, was (and is) incorporated under the laws of the state of North Carolina and has its principal place of business in Fort Lauderdale, Florida. (Declaration of Nancy Kowalski, ¶2).

4.      The Complaint also names as  Defendants TSRC of Florida, Inc., Corporate Creations Network, Inc. and Tammy Hawkins.  Plaintiff dismissed Corporate Creations Network effective January 6, 2010.   TSRC was merged into Technisource, Inc. on December 31, 2006, prior to Plaintiff's employment by Technisource and/or Spherion in or about June 2007 (See Complaint ¶¶14, in which she alleges she was employed for 2 years, and Complaint ¶29 reflecting a termination date of July 9, 2009).  As a result, TSRC is a sham defendant and fraudulently joined.  Hawkins was, at the time the action was commenced, and still is, a resident of the State of California.  However, Hawkins was fraudulently joined and is a sham defendant whose citizenship should be disregarded for purposes of diversity jurisdiction and removal.  "Fraudulent joinder provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1988).

5.      Defendants TSRC and Hawkins are not required to join in this removal, because each is a nominal or sham defendant.  *Id.*; *Farias v. Bexar County Bd. of Trustees for Mental Health*, 925 F.2d 866, 871 (5th Cir. 1991).

6.      Fraudulent joinder applies when the court determines that the plaintiff has failed to state a cause of action against the non-diverse defendant.  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Lewis v. Time, Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), aff'd, 710 F.2d 549 (9th Cir. 1983).  If the plaintiff fails to state a cause of action against the non-diverse defendant, and the failure is

1   obvious according to settled state law, then the joinder is deemed fraudulent and

2   removal based on diversity is proper. *Morris*, 236 F.3d at 1067; *McCabe v. General*

3   *Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *Bennett v. Allstate Insurance Co.*,

4   753 F. Supp. 299, 302 (N.D. Cal. 1990). It does not have to be shown that the

5   purpose of joinder was to prevent removal. *Dodson v. Spiliada Maritime Corp.*, 951

6   F.2d 40, 42 (5th Cir. 1992).

7       7.   Here, under well settled principles of California law, Plaintiff has failed

8   to state a cause of action against Hawkins.

9       8.   The factual allegations in the Complaint against Hawkins are contained

10  in paragraphs 14 through 29 of the Complaint under the heading "General

11  Allegations." These allegations relate to Hawkins' general management of the

12  Technisource office, involving Plaintiff and other employees (¶¶17-20, 22) and

13  specific meetings with Plaintiff in which Hawkins addressed Plaintiff's job

14  performance (¶¶23-29). These general allegations are incorporated into each cause

15  of action, with no additional specific factual allegations.

16      9.   Based on the above allegations, Plaintiff asserts that Defendants

17  engaged in retaliation, breach of implied contract, breach of implied covenant of

18  good faith and fair dealing, wrongful termination, intentional infliction of emotional

19  distress, negligent infliction of emotional distress and interference with prospective

20  business advantage. Without regard to Federal and California law, Plaintiff pleads

21  each of these claims against Hawkins, in addition to her employer. All of these

22  claims are barred as to Hawkins as a matter of law.

23      10.  Hawkins Cannot Be Individual Liable for Retaliation or Wrongful

24  Termination in Violation of Public Policy. Plaintiff's first cause of action alleges

25  retaliation under Title VII and FEHA and her fourth cause of action alleges wrongful

26  termination in violation of public policy. *Reno v. Baird*, 18 Cal.4th 640, (1998) and

27  *Jones v. The Lodge at Torrey Pines*, 42 Cal. 4th 1158, 1162-1173 (2008), both clearly

28  establish that such causes of action cannot be maintained against an individual

CASE NO.

8106198_1.DOC

1  defendant such as Hawkins here.  Further, supervisory personnel cannot be held

2  individually liable for wrongful discharge in violation of fundamental public policy

3  where the basis for the cause of action is alleged discrimination under FEHA.  *Ibid.*

4  ([i]t would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then

5  allow essentially the same action under a different rubric").  *See also e.g.,*

6  *LeBourgeois v. Fireplace Manufacturers, Inc.,* 68 Cal.App.4th 1049, 80 Cal. Rptr.

7  2d 660 (1998).  Where it is improper to name an individual supervisor as a defendant

8  under state law, the joinder of the individual is fraudulent and should be disregarded.

9  *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (ignoring

10  individual as sham defendant because under California law individual supervisor

11  cannot be liable for discrimination); *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th

12  Cir. 1992) (finding fraudulent joinder and disregarding individual defendant as a

13  sham where state law did not impose vicarious liability on individual supervisor).

14         11.    <u>Plaintiff May Not Name Tammy Hawkins As A Defendant As To Her</u>

15  <u>Second Cause Of Action For Breach of Implied Contract</u>.  Plaintiff's second cause of

16  action for breach of implied contract alleges that Plaintiff entered into an oral

17  employment agreement with all named Defendants that Plaintiff would not be

18  demoted, discharged or otherwise disciplined in her employment except for good

19  cause and that Plaintiff would be evaluated in a fair and objective manner and

20  afforded progressive discipline.  (Complaint at ¶ 39.)  Plaintiff contends that this oral

21  employment agreement was evidenced in various written documents, including

22  employee handbooks and personnel policies and procedures issued by Defendants.

23  (Complaint at ¶ 40).  Finally, Plaintiff alleges that Defendant Tammy Hawkins was

24  an employee of Defendant Technisource, Inc.  (Complaint at ¶ 6.)

25         12.    Plaintiff clearly cannot sue Defendant Hawkins for breach of an implied

26  employment contract.  Corporate employees are immune from individual liability for

27  breach of employment contract.  *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 25,

28  disapproved on other grounds in *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*

1  (1994) 7 Cal.4th 503, 521 n. 10; *Kerry v. Rose* (1990) 216 Cal.App.3d 1551, 1564.

2  The only proper defendant in an action for breach of an employment contract is the

3  party to the employment contract, the employer. *Cleary v. American Airlines, Inc.*

4  (1980) 111 Cal.App.3d 443, 456, disapproved on other grounds in *Guz v. Bechtel*

5  *Natl', Inc.* (2000) 24 Cal. 4th 317, 351.  Accordingly, Defendant Hawkins is a sham

6  defendant as to the second cause of action.

7        13.   Plaintiff May Not Name Tammy Hawkins As A Defendant As To Her

8  Third Cause Of Action For Breach of the Implied Covenant of Good Faith And Fair

9  Dealing.  Plaintiff's third cause of action for breach of the implied covenant of good

10 faith and fair dealing is based on the allegation that Plaintiff's oral employment

11 contract contained an implied covenant of good faith and fair dealing and that by

12 taking certain employment actions against Plaintiff, Defendants breached said

13 implied covenant of good faith and fair dealing.  (Complaint at ¶¶ 48 & 49.)

14       14.   While the law implies a covenant of good faith and fair dealing in every

15 contract, because Plaintiff's employment agreement is with her employer (and not

16 another employee, Tammy Hawkins), the third cause of action may not be plead

17 against Defendant Hawkins. *Cleary, supra*, 111 Cal.App.3d at 456 (noting that an

18 implied covenant of good faith and fair dealings claim can only be plead against an

19 employer, not a supervisor).  Accordingly, Defendant Hawkins is a sham defendant

20 as to the third cause of action.

21       15.   Plaintiff's intentional infliction claim also fails against Defendant

22 Hawkins.  As the Ninth Circuit articulated in *Braunling v. Countrywide Home Loans,*

23 *Inc.,* 220 F.3d 1154, 1158 (9th Cir. 2000):

24        Under California law, to make out a cause of action for intentional

25        infliction of emotional distress, a plaintiff must show, in relevant part,

26        that the defendant engaged in extreme and outrageous conduct that

27        exceeded the bounds of what is generally tolerated in a civilized society.

28        Conduct which exhibits mere rudeness and insensitivity does not rise to

the level required for a showing of intentional infliction of emotional distress. (internal citations omitted).

16.    Plaintiff's allegations regarding Hawkins' alleged conduct do not contain any allegations of conduct rising to the level of extreme and outrageous" conduct as defined by California law, and thus cannot form the basis of a claim for intentional infliction of emotional distress. Further, as a matter of law, individual supervisors such as Hawkins cannot be held personally liable for personnel management decisions. *See Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996).  As the Janken court held:

> Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society.   A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.   If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination. Id.

"The FEHA does not apply to individual non-employer supervisors, thus [i]t would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then allow essentially the same action under a different rubric." *LeBourgeois v. Fireplace Manufacturers, Inc.*, at 68 Cal.App.4th at 1057, quoting *Reno v. Baird*, 8 Cal. 4th at 664.

17.    It is clear the conduct alleged to have been undertaken by Hawkins was in the course of the normal business relationship and constitutes personnel management activity. *See id.* at 64-65 (holding that "commonly necessary personnel management actions such as hiring and firing, job or  project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off,

8106198_1.DOC

1  and the like, do not come within the meaning of harassment," and "are actions of a

2  type necessary to carry out the duties of business and personnel management").  It is

3  well-settled in California that such personnel management activity cannot support a

4  claim for intentional infliction of emotional distress.  *Ramirez v. Salvation Army*,

5  2006 WL 1867722, *8 (N.D. Cal., July 6, 2006) (not reported in F.Supp.2d) (listing

6  examples of federal courts following the precedent set in *Janken* that individual

7  supervisors cannot be liable for claims of intentional infliction of emotional distress).

8  In fact, termination decisions, even when coupled with rude and insensitive behavior,

9  cannot form the basis of a claim for intentional infliction of emotional distress.  *See*

10  *Walker v. Boeing Corp.*, 218 F.Supp.2d 1177, 1190 (C.D. Cal., 2002) ("Terminating

11  an employee for improper or discriminatory reasons, like many other adverse

12  personnel management decisions, is insufficiently extreme or outrageous to give rise

13  to a claim for intentional infliction of emotional distress.").  As a result, it is obvious

14  that the alleged conduct is insufficient to state a cause of action against Hawkins for

15  intentional infliction of emotional distress.

16        18.    <u>Plaintiff Has No Claim for Negligent Infliction of Emotional Distress</u>

17  <u>Against Hawkins.</u>  Because an employer's supervisory conduct is inherently

18  intentional, "It is clear … that there was no duty not to discharge defendants and that

19  any actions by the employer were intentional, not negligent.  An employer's

20  supervisory conduct is inherently 'intentional.'"  *Semore v. Pool,* 2217 Cal.App.3d

21  1087, 1105, 266 Cal.Rptr. 280, 291 (1990); *Edwards v. United States Fid. & Guar.*

22  *Co.,* 848 F.Supp. 1460, 1466 (ND CA 1994).  Further, because this claim is based on

23  the same allegations as the retaliation and intentional infliction claims, it fails on the

24  same basis.

25        19.    <u>Plaintiff May Not Name Tammy Hawkins As A Defendant As To Her</u>

26  <u>Seventh Cause Of Action For Interference With Prospective Business Advantage.</u>

27  Plaintiff claims that Defendants interfered with her prospective business prospects by

28  contacting her clients and by contacting potential future employers without her

1   knowledge to allegedly defame her and to advise her client contacts that Plaintiff's

2   employment with Defendants had been terminated.  (Complaint at ¶¶ 74-76.)

3   Plaintiff's claim against Hawkins is fraudulent for two reasons: (1) Plaintiff has not

4   alleged facts sufficient to constitute a cause of action for interference with

5   prospective business advantage, and (2) even if Plaintiff had (or could) allege such

6   facts, Plaintiff cannot state such a claim against Defendant Hawkins, her former

7   supervisor.

8          20.    First, to plead a claim for interference with prospective business

9   advantage, Plaintiff must allege the following:  (1) an economic relationship between

10  plaintiff and some third party, with the probability of future economic benefit to the

11  Plaintiff; (2) Defendants' knowledge of the relationship; (3) intentional acts of the

12  Defendants' part designed to disrupt the relationship; (4) actual disruption of the

13  relationship; (5) economic harm to the Plaintiff proximately caused by the

14  Defendants' acts; and (5) that Defendants' acts were "wrongful by some legal

15  measure other than the fact of interference itself." *Korea Supply Co. v. Lockheed

16  Martin Corp.* (2003) 29 Cal.4th 1134, 1154-1154 (internal quotes omitted*); see also

17  Pardi v. Kaiser Found. Hosps.* (9th Cir. 2004) 389 F.3d 840, 852-853; *Reeves v.

18  Hanlon* (2004) 33 Cal.4th 1140.

19         21.    In *Pardi*, the federal court, applying California law, held that a job

20  applicant, who could not establish a probability that he would have been hired by a

21  prospective employer, could not state a claim for international interference with

22  prospective economic advantage based on the former employer's alleged refusal to

23  return the phone calls of the prospective employer or otherwise verify the job

24  applicant's former employment. Id. at 852-853.

25         22.    Here, Plaintiff fails to plead anything other than that certain of her

26  alleged clients and contracts and "potential future employers" were called by

27  Defendants to defame her and advise them that she was terminated before plaintiff

28  knew she was terminated.  (Complaint at ¶¶ 74 – 77).  Fatal to her claim, Plaintiff

1  does not allege any actual economic relationship that contained the probability of

2  future economic benefit to the Plaintiff, that there was an actual disruption of any

3  such relationship, that Plaintiff even suffered any economic harm or, finally, that the

4  alleged acts of Defendants were wrongful by some legal measure other than the fact

5  of the interference itself.  Because the cause of action completely fails to set forth the

6  allegations needed to establish such a claim against Defendant Hawkins (or the other

7  defendants for that matter), the cause of action for interference with prospective

8  business prospects against Defendant Hawkins can be disregarded completely as

9  fraudulent.  *See AIDS Counseling & Testing Ctrs. V. Group W Television, Inc.* (4th

10  Cir. 1990) 903 F.2d 10000, 1003 (noting that joinder is fraudulent if there is no

11  colorable ground for stating a cause of action against a nondiverse defendant).

12      23.    Second, even if Plaintiff could plead allegations to support a claim of

13  interference with prospective business advantage against her former employer, no

14  such claim can be stated against her supervisor or other employees of the corporate

15  Defendants who are acting within the course and scope of their employment.

16  *Sheppard v. Freeman* (1998) 67 Cal.App.4th 339, 347; *see also Shoemaker, supra,*

17  52 Cal.3d at 24.  In *Shoemaker*, the court held that supervisors acting with the scope

18  of their authority cannot be held liable for inducing an employer to breach a contract

19  with an employee or for interfering with an employee's contractual relationship with

20  an employer. Id.   Here, Plaintiff pleads that Hawkins was employed by the

21  Defendant Technisource, Inc. and was at all times acting within the course and scope

22  of her employment.  (Complaint at ¶¶ 6 & 11.)  Accordingly, Defendant Hawkins is

23  a sham defendant as to the seventh cause of action.

24      24.    Because none of the causes of action Plaintiff alleges can be stated

25  against the individual Defendant Hawkins, Plaintiff's Complaint does not state a

26  cognizable claim against Defendant Hawkins, she is a sham defendant, her residency

27  should be ignored and complete diversity between the parties is established.

28

8106198_1.DOC

25. Based on Plaintiff's allegations, the amount in controversy exceeds the sum or value of $75,000, excluding interest and costs. The Complaint does not allege a specific damages amount as to each claim. Removal is therefore proper if, from the allegations of the Complaint and the Notice of Removal, it is more likely than not that the claims exceed $75,000. *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860 (9th Cir. 1996); *Lucett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). In determining whether the jurisdictional minimum is met, the Court considers all recoverable damages, including emotional distress damages, punitive damages, statutory penalties, and attorneys' fees. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Anthony v. Security Pac. Fin'l Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996).

26. Plaintiff's Complaint contemplates an amount in controversy in excess of $75,000.00, exclusive of interest and costs, in that Plaintiff seeks damages for economic losses including lost wages and employment benefits; general damages; special damages; attorneys fees and punitive damages. *See* complaint ¶¶ 36,37,57,58,62-65,71,72 and Prayer for Relief. It is facially apparent that Plaintiff's wrongful termination claim exceeds $75,000 based on her "lengthy list of compensatory and punitive damages combined with a claim for attorneys' fees." *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003).

27. Based on a conservative good-faith estimate of the value of the claims in this action, if Plaintiff prevails on each of his causes of action and recovers the damages that he seeks for each claim, Plaintiff will likely recover well over $75,000 for unpaid lost wages and related employment benefits, punitive damages, and damages for emotional distress. The Court is certainly well aware that such damages in an action for wrongful termination and discrimination, even for a low-wage employee, can easily exceed $75,000. Indeed, other courts reviewing similar complaints have found the jurisdictional amount satisfied based merely on the

CASE NO. _____
NOTICE OF REMOVAL

8106198_1.DOC

1    allegations of the complaint.  See, e.g. *White v. FCI USA, Inc.*, 319 F.3d 672, 674-75

2    (5th Cir. 2003) (finding at least $75,000 in controversy in wrongful termination

3    action where plaintiff sought compensatory damages for lost income, emotional

4    distress, punitive damages, and attorneys' fees); *Yong v. Hyatt Regency Sacramento*,

5    2007 WL 471008 at *1 (E.D. Cal. 2007) (complaint for wrongful termination based

6    on race seeking compensatory damages, emotional distress damages, punitive

7    damages and attorneys' fees placed at least $75,000 in controversy although plaintiff

8    earned less than $2,000 per month at the time of termination).

9         28.    To the extent any additional facts are needed to establish the amount in

10   controversy, they can be found in the declarations accompanying this Notice of

11   Removal.  Plaintiff alleges that she was terminated On July 9, 2009-- approximately

12   six month ago.  In the year prior to her termination, she earned $103,252.19

13   (Declaration of Tammy Hawkins, paragraph 3), an average of $1,985.60 per week,

14   and was entitled to benefits valued at $68.51 per week (Declaration of Carol

15   Chapman, paragraph 3).  Thus, assuming Plaintiff's average monthly compensation

16   would have remained fairly consistent, his damages for lost wages and benefits thus

17   far would be approximately $54,000.  By the time this case is resolved at trial, likely

18   no earlier than January 2011 (a year from the date the lawsuit was filed), Plaintiff's

19   unmitigated lost wages could be in excess of $100,000.  To this amount, one must

20   add Plaintiff's lost future earnings (including prospects for advancement to higher-

21   paying positions) and damages for emotional distress, injury to Plaintiff's reputation,

22   punitive damages and statutorily-authorized attorney's fees .  When all these are

23   considered, it easily becomes "more likely than not" that the amount at issue in this

24   lawsuit far exceeds the minimum amount required for diversity jurisdiction. *Sanchez*

25   *v. Monumental Life Ins. Co.*, 95 F.3d 856, 860 (9th Cir. 1996); *Kroske v. US Bank*

26   *Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (finding at least $75,000 in controversy

27   where plaintiff's lost wages from alleged wrongful termination amounted to

28   $55,000).  In addition to alleged lost wages, Plaintiff claims attorneys' fees,

1 emotional distress and punitive damages, which yields a total amount in controversy
2 well in excess of $75,000.

3      29.    Finally, California law does not provide any specific monetary limit on
4 the amount of punitive damages which may be awarded under Civil Code § 3294,
5 and the proper amount of punitive damages under California law is based on the
6 reprehensibility of defendant's misdeeds, the ratio between compensatory and
7 punitive damages, and ratio between damages and defendant's net worth. *Boyle v.*
8 *Lorimar Productions, Inc.*, 13 F.3d 1357 (9th Cir. 1994).   Punitive damages are
9 included in calculating the amount in controversy. *Davenport v. Mutual Ben. Health*
10 *& Acc. Ass'n.*, 325 F. 2d 785 (9th Cir. 1963).

11      30.    This type of damage allegations has been held sufficient to satisfy the
12 amount in controversy. *See Duin v. Allstate*, 1997 WL 813002 (S.D. Cal.);  *see also*
13 *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003);*Aucina v. Amoco Oil Co.*,
14 871 F. Supp. 332 (S.D. Iowa 1994) (the defendant-employer showed that amount in
15 controversy exceeded minimum for diversity jurisdiction where former employee
16 asserted claims for lost wages, lost benefits, mental anguish, and punitive damages).

17      31.    This Court, therefore, has original jurisdiction over Plaintiff's claims by
18 virtue of diversity of citizenship and satisfaction of the amount in controversy
19 requirement of 28 U.S.C. §1332., in addition to the presentation of a question under
20 federal law.  This action is thus properly removable to federal court pursuant to 28
21 U.S.C. §§1331 and 1332 and §1441(a)and (b).

22      32.    Defendant's Notice of Removal has been filed within 30 days after the
23 initial receipt by Defendants of a copy of Plaintiff's Complaint in accordance with 28
24 U.S.C. §1446(b).

25      33.    Venue is proper in this Court.

26      34.    Pursuant to 28 U.S.C. §1446(d), Defendants have given written notice
27 of the removal of this action to all parties and is filing a copy of this Notice with the
28 Superior Court of California, County of Orange.  (Attached as Exhibit "C.")

1         WHEREFORE, Defendants Spherion and Technisource remove this action to

2    this Court.

3

4    DATED:  January 15, 2010

                 OGLETREE, DEAKINS, NASH, SMOAK
                 & STEWART, P.C.

5

6

7                     By: _____

8                           Linda Claxton
                 Attorneys for Defendants

9                     SPHERION CORPORATION,
                 SPHERION ASSESSMENT, INC.,

10                    TSRC OF FLORIDA, INC.,
                 TECHNISOURCE, INC. AND TAMMY

11                    HAWKINS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. _____
NOTICE OF REMOVAL

8106198_1.DOC

# EXHIBIT A

COPY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 11 2009

ALAN CARLSON, Clerk of the Court

Y _____ J. TRAN _____ DEPUTY

1   Andrea S. Loveless, Esq. (State Bar No. 231735)
    LAW OFFICES OF ANDREA LOVELESS, LLP
2   114 Pacifica, Suite #215
    Irvine, CA 92618
3   Tele: (949) 679-4690
    Fax:  (949) 679-4696
4
5   Attorney for Plaintiff,
    HEATHER HUGGINS
6
7
8                SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                        FOR THE COUNTY OF ORANGE          30-2009
10  HEATHER HUGGINS, an individual;        ) Case No.:  0 0 3 2 7 5 7 6
11                                         )
             Plaintiff,                    )
12                                         )
         vs.                               ) HUGGINS' COMPLAINT FOR:
13                                         )
    SPHERION CORPORATION, SPHERION         ) 1)  RETALIATION;
14  ASSESSMENT, INC., TSRC OF FLORIDA,     ) 2)  BREACH OF IMPLIED
    INC., CORPORATE CREATIONS              )     CONTRACT;
15  NETWORK, INC., TECHNISOURCE, INC.;     ) 3)  BREACH OF IMPLIED
    TAMMY HAWKINS, an individual, and      )     COVENANT OF GOOD FAITH
16  DOES 1-50, inclusive,                  )     AND FAIR DEALING;
17                                         ) 4)  WRONGFUL TERMINATION;
             Defendants.                   ) 5)  INTENTIONAL INFLICTION OF
18                                         )     EMOTIONAL DISTRESS;
                                           ) 6)  NEGLIGENT INFLICTION OF
19                                         )     EMOTIONAL DISTRESS; AND,
                                           ) 7)  INTERFERENCE WITH
20                                         )     PROSPECTIVE BUSINESS
                                           )     ADVANTAGE
21                                         )
22                                         [Title VII of the Civil Rights Act of 1964, 42
                                           U.S.C. §2000e-3(a), California *Gov't Code*
23                                         §12940,
24                                              JUDGE FRANZ E. MILLER
    _____      DEPT. C14
25                    PARTIES
26      Plaintiff, HEATHER HUGGINS (hereinafter known as "HUGGINS"), alleges as
27  follows:
28      1.    HUGGINS was, and at all relevant times referenced herein, a current resident of

_____
                                    1
                                                              *Complaint*

EXHIBIT___A___, PAGE _14_

1  the State of California.  HUGGINS is a former employee of SPHERION CORPORATION,
2  SPHERION ASSESSMENT, INC., TSRC OF FLORIDA, INC., CORPORATE CREATIONS
3  NETWORK, INC., TECHNISOURCE, INC. and DOES 1-50, inclusive (hereinafter collectively
4  known as "DEFENDANTS").
5      2.    HUGGINS alleges, upon information and belief, that Defendant, SPHERION
6  CORPORATION, was at all times referenced herein, a Delaware corporation authorized to and
7  doing business in the State of California.
8      3.    HUGGINS alleges, upon information and belief, that DEFENDANT, SPHERION
9  ASSESSMENT, INC., was at all times referenced herein, a North Carolina corporation
10 authorized to and doing business in the State of California.
11     4.    HUGGINS alleges, upon information and belief, that DEFENDANT, TSRC OF
12 FLORIDA, INC., was at all times referenced herein, a Delaware corporation authorized to and
13 doing business in the State of California.
14     5.    HUGGINS alleges, upon information and belief, that DEFENDANT,
15 TECHNISOURCE, INC., was at all times referenced herein, a Delaware corporation authorized
16 to and doing business in the State of California.
17     6.    HUGGINS alleges, upon information and belief, that DEFENDANT, TAMMY
18 HAWKINS (hereinafter "HAWKINS"), was at all times referenced herein, an individual who
19 resides in Orange County, California and was and is an employee of DEFENDANT
20 TECHINISOURCE, INC.
21     7.    HUGGINS alleges, upon information and belief, that SPHERION
22 CORPORATION, SPHERION ASSESSMENT, INC., TSRC OF FLORIDA, INC.,
23 CORPORATE CREATIONS NETWORK, INC., TECHNISOURCE, INC., TAMMY
24 HAWKINS, and DOES 1-50, inclusive (collectively referred to herein as "TECHNISOURCE"
25 or "DEFENDANTS") acted together in committing the violations of the laws/regulations alleged
26 herein.
27     8.    HUGGINS was employed by TECHNISOURCE in California during the
28 applicable statute of limitations and was terminated from her employment within said time.

2

*Complaint*

EXHIBIT _A_ , PAGE _15_

9.     The true names and capacities of DEFENDANTS, DOES 1-50, inclusive, are presently unknown to HUGGINS, who therefore sues said DEFENDANTS by such fictitious names. HUGGINS will seek leave of Court to amend this Complaint to insert the true names and capacities of such fictitiously named DEFENDANTS when the same have been ascertained.

10.     HUGGINS is informed and believes, and thereon alleges, that each of the DEFENDANT DOES designated herein is contractually, vicariously, or legally responsible in some manner for the events and happenings hereinafter alleged, either through said DEFENDANT DOES' own conduct, or through the conduct of their agents, servants, consultants, joint ventures, and employees, and each of them, or in some other manner.

11.     HUGGINS is informed and believes, and thereon alleges, that at all relevant times herein mentioned, each of the DEFENDANTS was the agent, representative, principal, servant, employee, partner, alter ego, joint venture, successor-in-interest, assistant and/or consultant of each and every remaining DEFENDANT, and as such, was at all times acting within the course, scope, purpose and authority and said agency, partnership, and/or employment, and with the express or implied knowledge, permission, authority, approval, ratification, and consent of the remaining DEFENDANTS, and each DEFENDANT was responsible for the acts alleged herein, were reckless in the selection, hiring and supervision of each and every other DEFENDANT as an agent, representative, principal, servant, employee, partner, alter ego, joint venturer, successor-in-interest, assistant and/or consultant.

## REPRESENTED PARTY

12.     HUGGINS held a position at TECHNISOURCE in the State of California and was subject to the violations resulting from the corporate practices set forth herein.

## JURISDICTION AND VENUE

13.     TECHNISOURCE, at all material times herein, was a foreign corporation doing business in the State of California, including the County of Orange, California.

/ / /

---

3

*Complaint*

EXHIBIT____A____, PAGE __16__.

## GENERAL ALLEGATIONS

14.    HUGGINS was an employee of TECHNISOURCE in the Irvine, California branch for two years.  During her tenure at TECHNISOURCE, HUGGINS was recognized on many separate occasions for her outstanding work and value to the company.

15.    HUGGINS was employed in the position of Account Executive and was responsible for many large clients of TECHNISOURCE, including but not limited to Kaiser Permanente and First American.

16.    HUGGINS was a member of the prestigious Spherion Connections Guide Program which required a nomination by her Managing Director. Further, on June 12, 2009 HUGGINS received a letter from Roy Krause, CEO and Christine Reynolds, VP Service Excellence and Strategic Accounts congratulating her on being selected and stating HUGGINS' outstanding qualities: "Partnership, Respect, Customer Focus and Results".  In addition, HAWKINS and Sean Ebner (Vice President, Professional Services) awarded HUGGINS $100 dinner for her hard work and success in managing the Kaiser Permanente account.  In the fourth quarter of 2008, the "Western Regional Technology Solutions Campaign" was launched by VP Sean Ebner.  HUGGINS was the only producer in the Western Region to be asked not to participate because Mr. Ebner felt HUGGINS was doing such an outstanding job with the Kaiser account he wanted 100% of her efforts to be focused on Kaiser.  HUGGINS has consistently exceeded corporate, regional and branch goals in addition to receiving outstanding marks on all of her reviews.

17.    On April 17, 2009, HUGGINS accompanied to HAWKINS to Corona, California to advise Kaiser employees of a reduction in pay rate.  During this trip, HUGGINS used the opportunity to discuss some issues with HAWKINS that HUGGINS thought should be corrected at the office because they were either against company policy or were illegal.

18.    First and foremost, HAWKINS had previously told HUGGINS that she was going to push commissions ("GP") under Hazel.  HUGGINS informed HAWKINS that she did not think that was right or fair to take GP away from someone in the branch who had earned it and / / /

4

EXHIBIT  *A*  , PAGE  17

1   push it under another employee, Hazel, who had not earned the GP, especially when all of team,
2   including the branch was struggling.

3         19.    Furthermore, HUGGINS expressed to HAWKINS, that the team morale was low
4   and that there was a perception within the team that HAWKINS cared more about the 7:30 a.m.
5   meeting than what occurred during the remainder of the 10 to 12 hour workday.  HUGGINS
6   complained that HAWKINS requirements for all employees to come in early, work late and do
7   not take lunches was unfair, especially when employees were punished when leaving work at
8   their designated end time.  HUGGINS advised HAWKINS that she was shocked to hear that
9   another team member, Angela, had been written up for being late to a morning meeting and that
10  she was scared after hearing this that HAWKINS was trying to create a case to let Angela go
11  rather than Hazel if she had to do another layoff.  HUGGINS told her that if the employees leave
12  at their designated work day end time, 5:00 p.m., they are considered "clock watchers" and
13  treated poorly by HAWKINS.

14        20.    HAWKINS became enraged that HUGGINS had brought up these actions that
15  violated corporate policy and state and federal laws and immediately advised HUGGINS that she
16  was only allowed to bring to her attention problems that specifically dealt with HUGGINS and
17  walked away.

18        21.    On April 17, 2009, HAWKINS called a branch meeting. HAWKINS opened up
19  the meeting stating that it had been brought to her attention that employees were not aware of
20  branch policies.

21        22.    HAWKINS stated that the following are branch policies.  Employees are expected
22  to work late and cover the branch when there were orders.  TECHNISOURCE has a 7:30 a.m.
23  start time and 5:00 p.m. end time.  "One-on-One" meetings are very important and team
24  members were not allowed to discuss the content of these meetings with others on the team. The
25  team members were not decision makers and did not have the authority to make decisions and
26  are not to talk with one another.  HAWKINS also stated in the "branch meeting" that all the
27  times Mr. Ebner called or sent HUGGINS an email praising her hard work, was because
28  HAWKINS told him to do so.

5

23.     After the April 17, 2009 branch meeting, HAWKINS started treating HUGGINS disparately.  HAWKINS began to single HUGGINS out for "one-on-one" meetings, wherein HAWKINS advised HUGGINS that she was meeting or exceeding expectations, but that this needed to continue.  Further, in May of 2009, HAWKINS gave HUGGINS her performance review, wherein HUGGINS was gauged to have met or exceeded all corporate, regional and branch goals, but was then accused by HAWKINS to have been "distracted and disengaged." HAWKINS cited the following examples:

24.     After April 2009, HAWKINS required HUGGINS to copy HAWKINS on all submittals for placements; HAWKINS started questioning HUGGINS on her daily activities, which had never happened prior to April 2009. HAWKINS began questioning HUGGINS' submittals, even though the client had asked that the document be presented in that particular format.  HAWKINS began advising HUGGINS that she didn't think the Kaiser account was "worth working" and was considering not working the account anymore, despite what Sean Ebner had said about HUGGINS putting 100% of her effort into Kaiser previously.  HAWKINS excluded HUGGINS from team working events, where every employee was included. Hawkins also started excluding HUGGINS from meetings involving HUGGINS' clients, such as First American.

25.     Finally, on July 8, 2009 during a 7:30 a.m. team meeting, HAWKINS asked HUGGINS about an email that had been sent the previous day at 4:57 p.m.  HUGGINS responded that she had not yet read the email.  Afterwards, HAWKINS asked to meet with HUGGINS and advised her that her job performance was not improving and used the example of the unread email and indicated that she had not been prepared to participate in the morning meeting.  HUGGINS responded that she had come in early that morning to run a job report for the presentation at the meeting as had been requested.  HUGGINS then advised HAWKINS that she wanted to contact Human Resources.  HAWKINS then sent HUGGINS home (with pay) and indicated she would set up a conference call with Human Resources for the next day.

26.     Later on July 8, 2009, HUGGINS got a message from HAWKINS indicating that the conference call had been set up for 8:00 a.m. on July 9, 2009.

27.     On July 9, 2009 HUGGINS arrived at the office, expecting to participate in a conference call with HAWKINS and Human Resources.  HUGGINS arrived early and she entered the office through the Spherion side and asked Geoff Myers if he would look up Scott Holland's (of Human Resources) contact information. Mr. Myers wrote the phone numbers on the back of her business card and told HUGGINS that she could use Brian Veverka's office. HUGGINS called Mr. Holland's cell phone and office line. When Mr. Holland did not answer, HUGGINS went to the TECHNISOURCE side of the office because she expected that either Mr. Holland was already on the phone for the meeting or was attending the scheduled meeting in person.

28.     At the time scheduled for the conference call, HUGGINS was advised by HAWKINS that Human Resources would not be participating in the call.  HUGGINS advised HAWKINS that she was not comfortable proceeding with a meeting with HAWKINS again without Human Resources present.  HUGGINS asked HAWKINS three times to be allowed to call Human Resources before their meeting. HAWKINS refused HUGGINS request all three times. Then, HAWKINS advised HUGGINS that she was not going to allow HUGGINS to have a private conversation with Human Resources and HAWKINS became agitated.

29.     HUGGINS left the office because she did not feel comfortable, and she wanted to contact Human Resources before she met with HAWKINS again alone.  HUGGINS immediately called TECHNISOURCE's Human Resources following her departure from the TECHNISOURCE office, at 9:20 a.m. on July 9th, and Human Resources informed HUGGINS that her ticket number was 4953558.  Human Resources then informed HUGGINS that someone from Human Resources would be calling her later that afternoon, and Human Resources advised HUGGINS not to return to the TECHNISOURCE office that day.  HUGGINS' attorney then emailed HAWKINS and Mr. Ebner at 9:58 a.m. and informed them that HUGGINS had contacted Human Resources, HUGGINS had received a ticket number, and HUGGINS was instructed not to return to the office that day and to wait for Human Resources to call her back. Later that afternoon, HUGGINS received a call from Ulyana Chula advising her that an email had been sent out indicating that HUGGINS was no longer employed with TECHNISOURCE.

7

*Complaint*

EXHIBIT __A__, PAGE __20__

### FIRST CAUSE OF ACTION

#### (Retaliation Against All Defendants)

30.     HUGGINS re-alleges each preceding Paragraph as though fully set forth herein.

31.     HUGGINS alleges that at all relevant times herein, DEFENDANTS' actions, including but not limited to, violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §2000, et seq., constitute an unfair and unlawful activity prohibited by California *Government Code* §12940, et seq. TECHNISOURCE'S actions violated Federal and State Laws protecting employees from retaliation.

32.     On April 17, 2009 and times thereafter, HUGGINS opposed DEFENDANTS' discriminatory and unlawful policies as described above and summarized here as: pushing other employees' rightfully earned commissions under employees who had not earned them; denying employees their lunch breaks; forcing non-exempt employees to work overtime without getting paid overtime; and utilizing discriminatory lay-off practices.

33.     HUGGINS complained to her dotted line supervisor, HAWKINS, about DEFENDANTS' above-described discriminatory and unlawful acts.

34.     HUGGINS alleges that DEFENDANTS, specifically TECHISOURCE and HAWKINS, failed to properly respond to HUGGINS' protected activity of notifying her direct manager, as well as the corporate Human Resources department of unlawful activity, discriminatory and unlawful policies, and a hostile work environment.

35.     HUGGINS alleges that her summary termination of employment by DEFENDANTS was as a result of her attempts to bring the unlawful actions of her manager to the attention of the corporate Human Resources Department.

36.     As a result of DEFENDANTS' retaliation against her, HUGGINS has suffered and continues to suffer damages, in the form of lost wages and other employment benefits, and severe emotional and physical distress, the exact amount of which will be proven at trial.

37.     DEFENDANTS and each of them acted for the purpose of causing HUGGINS to suffer financial loss and severe emotional distress and physical distress and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.



EXHIBIT _A_ , PAGE _21_

*Complaint*

**SECOND CAUSE OF ACTION**

**(Breach of Implied Contract Against All Defendants)**

38.   HUGGINS re-alleges each preceding Paragraph as though fully set forth herein.

39.   In April 2007, HUGGINS entered into an oral employment agreement with DEFENDANTS whereby DEFENDANTS agreed that: (a) HUGGINS would not be demoted, discharged or otherwise disciplined except for good cause and with notice and an opportunity to be heard; and (b) HUGGINS would be evaluated in a fair and objective manner and afforded progressive discipline.

40.   This oral employment agreement was evidenced in various written documents, including but not limited to, TECHNISOURCE'S and SPHERION'S employee handbook(s) and personnel policies and procedures.

41.   Additionally, HUGGINS was employed by DEFENDANTS for almost two years, was assured on numerous occasions that she would not be terminated arbitrarily, and relied on the consistent praise of her work, the recognition of her excellence, promotions, the promise of additional promotions, and the industry practice of for cause termination, to conclude that HUGGINS and DEFENDANTS had entered into an implied contract that HUGGINS would not be discharged unless there was good cause to do so.

42.   Based on the oral representations and promises and conduct of DEFENDANTS, as set forth in Paragraphs 8, 9 and 16, above, HUGGINS had an employment contract with DEFENDANTS that she would be employed by DEFENDANTS so long as her performance was satisfactory, and that DEFENDANTS would not demote, discipline and/or discharge her without notice, an opportunity to be heard, and good and just cause.

43.   HUGGINS at all times fulfilled her duties and conditions under the contract and has been ready, willing, and able to continue performing them in a competent and satisfactory manner.

44.   HUGGINS undertook and continued employment and duly performed all the conditions of the Contract to be performed by her. HUGGINS has at all times been ready, willing / / /

9

EXHIBIT *A*, PAGE *22*